UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE

FREDDIE KYRIAKOS MILLER )
 )
V. ) NO. 2:11-CV-235
 )
MICHAEL J. ASTRUE, )
Commissioner of Social Security )

## REPORT AND RECOMMENDATION

The matter is before the United States Magistrate Judge, under the standing orders of the Court and 28 U.S.C. § 636 for a report and recommendation with respect to the Commissioner's denial of plaintiff's applications for disability insurance benefits and supplemental security income under the Social Security Act. Both the plaintiff and the defendant Commissioner have filed dispositive Motions [Docs. 10 and 12].

The sole function of this Court in making this review is to determine whether the findings of the Secretary are supported by substantial evidence in the record. *McCormick v. Secretary of Health & Human Services*, 861 F.2d 998, 1001 (6th Cir. 1988). "Substantial evidence" is defined as evidence that a reasonable mind might accept as adequate to support the challenged conclusion. *Richardson v. Perales*, 402 U.S. 389 (1971). It must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn is one of fact for the jury. *Consolo v. Federal Maritime Comm.*, 383 U.S. 607 (1966). The Court may not try the case *de novo* nor resolve conflicts in the evidence, nor decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Even if the reviewing court were to resolve the factual issues differently, the Secretary's decision must stand if supported by substantial evidence. *Listenbee v. Secretary of Health and Human*

*Services*, 846 F.2d 345, 349 (6th Cir. 1988). Yet, even if supported by substantial evidence, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 746 (6th Cir. 2007).

Plaintiff was 43 years of age at the time his applications for disability insurance benefits and supplemental security income were denied by the Administrative Law Judge ["ALJ"]. The ALJ found that the plaintiff had severe impairments of major depressive disorder, anxiety disorder, bipolar disorder and alcohol dependence. There is no dispute that he cannot return to past relevant employment.

Plaintiff's past medical history relative to his case is summarized in his brief as follows:

> A note from Dr. Joseph F. Smith, dated April 16, 2004, states Plaintiff was returning for medication management of major depression and panic with a history of alcohol abuse. It was noted that Plaintiff was attending VASAP and AA meetings and continued to maintain sobriety (Tr. 180).
> Plaintiff received treatment at Frontier Health from November 26, 2007 through September 17, 2008. Problems noted include crying spells, social withdrawal, decreased energy and motivation, disorganization, anxiety, jitteriness, worrying, poor attention/concentration, racing thoughts, decreased appetite, anger, apathy, depression, excessive or inappropriate guilt, feeling worthless, helplessness, hopelessness, loss of interest or pleasure, low self-esteem, impulsivity, aggression or rage, destructiveness, recklessness, diminished ability to think, distractibility, indecisiveness, elevated or expansive mood, irritability, insomnia, blunted or flat affect, hysteria, periods of staying awake for three to four days, panic attacks, and past issues of alcohol and marijuana use (Tr. 181-192).
> Plaintiff received psychiatric treatment by Dr. John Fenley from May 18, 2009 through December 11, 2009, during which time he was diagnosed with cyclothmic and panic disorder. Problems addressed during treatment include anxiety, racing thoughts, feeling down, not wanting to get out of bed, history of nocturnal panic, sleep disturbance, mania, depression, agitation, and poor stress tolerance (Tr. 193-194, 200-201).
> On November 23, 2009, Plaintiff underwent consultative exam by Anna Palmer, MS, SPE. Plaintiff explained his disabilities by saying, "I go from euphoria to basically

2

debilitated. I have some good days six to eight days a month. Most of my days are pretty bad, mediocre at best. I get overwhelmed because of anxiety so I procrastinate and put things off. I can see the pattern now of why I've never liked any job because I start with euphoria and then come back down. I think that's what's affected my work history." Plaintiff appeared depressed and was noted to be very tearful at times, even when discussing topics that did not appear very upsetting to him; he was noted to have some difficulty concentrating; and some psychomotor agitation was noted.

Plaintiff reported having symptoms of depressed mood, anhedonia, avolition, appetite disturbance, sleep disturbance, feelings of worthlessness, and difficulty concentrating; he reported having physical pain and aches when depressed and that sometimes he stays in bed all day; he reported passive suicidal ideation in the past; he reported having periods of euphoria lasting up to one day, during which he may do a lot of cleaning and at times has made poor decisions about spending; he reported having heard whispering in the past; he reported feeling overwhelmed and worrying excessively and having a feeling of doom at times; and he stated that he often feels on edge and has anxiety attacks occasionally, during which he has difficulty breathing, becomes tense, becomes nauseous, and his heart races. The diagnoses were major depressive disorder, recurrent, moderate; anxiety disorder NOS; and alcohol dependence; with a current global assessment of functioning [hereinafter "GAF"] of 55. Ms. Palmer opined the sustainability of Plaintiff's activities appears to be limited by depression; he presents a moderately low level of energy due to depression; and his concentration and persistence appear moderately impaired by depression and may be adequate to meet the demands of simple work-related decisions only (Tr. 195-199). [1]

On January 20, 2010, a reviewing state agency psychologist opined Plaintiff is moderately limited in his ability to understand, remember, and carry out detailed instructions; to maintain attention and concentration for extended periods; to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; to complete a normal workday and workweek without interruptions from psychologically based symptoms; to perform at a consistent pace without an unreasonable number and length of rest periods; to interact appropriately with the general public; and to respond appropriately to changes in the work setting. In summary, it was noted Plaintiff can understand and remember simple and one-three step detailed tasks; can concentrate and persist for at least a two hour time period in an eight-hour day with customary breaks; can interact effectively with the public occasionally and can interact appropriately with coworkers and supervisors frequently through an eight-hour workday; and can adapt to infrequent change within the restrictions applied above (Tr. 204-221). On April 13, 2010, a second reviewing state agency source affirmed this assessment as written (Tr. 222).

On April 21, 2010, a reviewing state agency physician opined Plaintiff is

---

[1]Plaintiff's recitation of Ms. Palmer's opinion omits that she found the plaintiff not limited in his ability to understand and remember general items and concepts, to have a satisfactory ability to interact with others in an appropriate manner, and not limited in his ability to adapt to changes in the workplace. (Tr. 198).

3

moderately limited in his ability to understand, remember, and carry out detailed instructions; to maintain attention and concentration for extended periods; to complete a normal workday and workweek without interruptions from psychologically based symptoms; to perform at a consistent pace without an unreasonable number and length of rest periods; to interact appropriately with the general public; to accept instructions and respond appropriately to criticism from supervisors; to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and to respond appropriately to changes in the work setting. In summary, it was opined Plaintiff has the ability to understand and remember simple instructions; has the ability to attend and concentrate for periods of two hours as is required in the workplace; has the ability to interact appropriately with peers and supervisors; and has the ability to adapt to routine workplace changes (Tr. 223-240).

On September 23, 2010, Plaintiff presented to Bluff City Medical Center to establish care. Review of systems was positive for irritability, anxiety, depression, fearfulness, mood swings, sleep disturbance, and environmental allergies. The diagnoses were impaired fasting glucose and mixed hyperlipidemia (Tr. 244-248).

Plaintiff continued treatment by Dr. Fenley from March 19, 2010 through October 5, 2010, during which time he was suffering reclusiveness, depression, high anxiety level, tremors, heart palpitations, sudden/unexpected panic attacks on most days, procrastination, psychomotor retardation, decreased attention and concentration, poor stress tolerance, passive suicidal ideation, increased irritability, racing thoughts, fatigue, feeling overwhelmed by little things, mood swings, insomnia, hypersomnia, and manic episodes (Tr. 249-250). On October 26, 2010, Dr. Fenley reported that Plaintiff has been under his care since May 18, 2009, and his current medications are Zyprexa 20 mgs. at bedtime, Prozac 40 mgs. in the morning, and Klonopin 1 mg. four times daily (Tr. 251).

On October 29, 2010, Dr. Fenley reported Plaintiff's diagnosis of bipolar disorder, most recent episode depressed, with a current GAF of 37 and highest past year GAF of 42. Dr. Fenley opined Plaintiff has no useful ability to sustain an ordinary routine without special supervision; to work in coordination with or proximity to others without being unduly distracted; to complete a normal workday and workweek without interruptions from psychologically based symptoms; to perform at a consistent pace without an unreasonable number and length of rest periods; to respond appropriately to changes in a routine work setting; to deal with normal work stress; to understand, remember, and carry out detailed instructions; to set realistic goals or make plans independently of others; to deal with stress of semiskilled and skilled work; or to maintain socially appropriate behavior.

Plaintiff was noted to be unable to meet competitive standards in the areas of remember work-like procedures; carry out very short and simple instructions; maintain attention for two hour segment; maintain regular attendance and be punctual within customary, usually strict tolerances; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers without unduly distracting them or exhibiting behavioral extremes; interact appropriately with the general public; adhere to basic standards of neatness and cleanliness; travel in unfamiliar place; and use public transportation. Plaintiff's ability to function was noted to be seriously limited, but not precluded, in the areas of understand and remember very short and simple

4

instructions, make simple work-related decisions, ask simple questions or request assistance, and be aware of normal hazards and take appropriate precautions. Dr. Fenley further opined Plaintiff's impairments or treatment would cause him to be absent from work an average of 15 days or more per month; his impairment has lasted or can be expected to last at least 12 months; and he is not a malingerer (Tr. 252-257).

[Doc. 11, pgs. 2-6].

Of some importance is a reference in the treatment note of Dr. Fenley from May 28, 2010, in which he states that the plaintiff denied the use of alcohol. (Tr. 249). This is in contrast to the treatment note from Bluff City Medical Center dated September 23, 2010, in which plaintiff admitted that "approximately 3 beers daily was consumed occasionally." (Tr. 244).

Dr. Robert Spangler, a vocational expert ["VE"], offered testimony at the administrative hearing which took place on December 7, 2010. The the ALJ first asked the VE to describe the plaintiff's past relevant work. He then asked him "if I find the Claimant has no exertional limitations, if I find he is restricted to performing simple, routine, repetitive tasks and that he can maintain concentration and persistence for said tasks, if he can only adapt to gradual and infrequent changes, and if he cannot perform work that does not require more than occasional public interaction, could he perform any of his past work?" Even though there were obviously problems recording Dr. Spangler's answer for the record, it appears that a return to any past relevant work was either ruled out or was not a basis for the ALJ's ultimate finding that the plaintiff was not disabled. (Tr. 28-30).

Using the same description of the plaintiff's "hypothetical" residual functional capacity ["RFC"], the ALJ asked the VE "would that hypothetical person be capable of any

5

work in the national economy?" Dr. Spangler then identified 3,336,000 jobs in the national economy and 78,381 in the region at the medium level which such a person could perform. He then stated that at the light level, there were 60 percent of 5,620,000 national and 119,843 jobs a person with those limitations could perform. Examples at the medium level were food preparation, dishwashing, janitorial work and farm animal care. Examples at the light level were "food prep, dishwasher, janitorial, house (inaudible), grounds maintenance, on the farm animal care, and we've got assemblers [inaudible] at those levels and hand packagers." If limited to the extent opined by Dr. Fenley, the VE opined that there would be no jobs which the plaintiff could perform. (Tr. 30-31).

On cross examination, plaintiff's counsel asked Dr. Spangler whether there would still be jobs available to plaintiff "if the mental or emotional limitations were changed to be consistent with Exhibit 11-F..." which was the opinion of Dr. Rudy Warren, the state agency psychiatrist, whose opinion is found at Tr. 237-239. The VE stated that "if the Court rules 11-F to be credible, there would be no jobs across [inaudible]. It was obvious from the remainder of his testimony that, in spite of the inaudible portion, the VE felt that the plaintiff could do no jobs if limited as described in Dr. Warren's assessment. The ALJ then asked Dr. Spangler "what about the DDS assessment at 11-F would cause you to find that there were no jobs involved?" Dr. Spangler replied that "people who know psychology"..."know nothing about vocational regulations, and there are just too many moderates in areas that are clearly where we sustain employment." These "moderates" were identified as the checked boxes at Tr. 237 and 238 opining that the plaintiff was "moderately limited" in various areas such as the ability to understand and remember detailed instructions, to maintain

6

concentration and attention for extended periods, or to complete a normal workday or workweek without interruptions. (Tr. 30-32).

The ALJ then asked the VE if he was basing his opinion on Dr. Warren's assessment on the "checked boxes" or on the narrative assessment at Tr. 239. He testified that his answer was based on the "checked boxes." However, on further examination by plaintiff's counsel Dr. Spangler opined that if the assessment were considered "as a whole" with both the checked boxes and the narrative assessment, it would "still eliminate these jobs." [Tr. 34].

In his hearing decision, the ALJ found that the plaintiff had the residual functional capacity to perform a full range of simple, repetitive routine work at all exertional levels that allows gradual and infrequent adaptation to changes in a work setting and no more than occasional work with the public.[2] (Tr. 50). He discussed the medical records in detail. (Tr. 50-54). He then found that the plaintiff's assertions regarding the limiting effects of his mental impairments were not credible to the extent that they were inconsistent with the RFC finding of the ALJ. He noted that while the plaintiff denied any continued use of alcohol to Dr. Fenley, he admitted drinking up to 3 beers a day on occasion to Bluff City Medical Center barely a month before Dr. Fenley's medical assessment (Tr. 252-57). He stated that the plaintiff's use of alcohol "could certainly exacerbate the claimiant's mental health symptoms." He also noted that the plaintiff had never been treated on an inpatient basis for his mental problems even though he alleged they were completely debilitating and disabling. (Tr. 54).

---

[2]The SAME residual functional capacity he used in his hypothetical to Dr. Spangler.

7

The ALJ then addressed the medical assessments and reports. He stated that he gave the state agency consultants "great weight," noting that he gave the plaintiff the benefit of the doubt and found that the plaintiff has a moderate restriction in his activities of daily living, even though the consultants only found a mild restriction in this area. He gave Dr. Fenley little weight because it was not consistent with the other evidence in the record or with his own findings on examination. The ALJ pointed out that a person as limited as opined by Dr. Fenley would be totally incapacitated or even institutionalized, and certainly could not function as well as described in his medical records. He also noted that in September of 2010, the personnel of Bluff City Medical Center (Tr. 244-47) observed plaintiff exhibiting none of the severe mental behaviors opined by Dr. Fenley a month later, and that nothing in the record could explain the reason for the change. The ALJ then makes reference to the opinion of "Ms. Ballard." There is a psychological examiner named Beth Ballard often used by the Commissioner in Social Security cases before this Court, but the Court sees no mention of her evaluating plaintiff in the record in this case. The ALJ is obviously referring to Anna Palmer. He found her opinion that the plaintiff had no limitations in social functioning entitled to little weight because other evidence indicated a moderate level in this regard, but found the remainder of her opinion to be entitled to great weight. (Tr. 54).

The ALJ found that, based upon his RFC finding and the testimony of the VE in response to a hypothetical based upon that finding, that there were a substantial number of jobs which the plaintiff could perform and that he was not disabled. (Tr. 56).

Plaintiff asserts that the ALJ did not give appropriate weight to the opinion of

plaintiff's treating psychiatrist, Dr. Fenley. He also asserts that the ALJ erroneously relied upon Dr. Warren, the State Agency psychiatrist, for substantial evidence when the VE, Dr. Spangler, testified that if the plaintiff had the limitations opined by Dr. Warren, there would be no jobs which he could perform.

There is no doubt that the regulations and the case law require the Commissioner to give careful consideration to the opinion of a treating physician. However, such opinions are entitled to controlling weight only when the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence..." in the record. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Indeed, an ALJ may find that "good cause" exists to give a treating physician's opinion less weight if the opinion is not bolstered by the evidence, the evidence supports a contrary finding, or the opinion is conclusory or inconsistent with the source's own records. *See* 20 C.F.R. §§ 404.1527(d)(2)-(4), 416.927(d)(2)-(4). The ALJ must always adequately explain his reasons for giving less weight to the treating physician's opinion.

There are various factors which substantiate the ALJ's stated reasons for giving little weight to Dr. Fenley's opinion. The consultative examination and report by Anna Palmer, as well as the opinions of the State Agency evaluators indicate plaintiff to be far less severely impaired than Dr. Fenley did. Also, Dr. Fenley's rather cryptic notes indicate marked improvement of the plaintiff's condition at various times, such as June 2009 (Tr. 194) and December 2009 (Tr. 194). Also, the detailed examination by Bluff City Medical Center on September 23, 2010 indicate very few "severe" psychiatric findings. In fact, the plaintiff was "not anxious, does not exhibit compulsive behavior, behaves appropriately for age, has

9

normal knowledge, has normal language, is not in denial, is not fearful, does not have flight of ideas, is not forgetful,..." etc. (Tr. 244-46). As previously stated, this neutral observation was made about one month before Dr. Fenley's assessment.

Also, the fact that plaintiff appeared to have been hiding his continued alcohol consumption from Dr. Fenley (Tr. 249) is particularly troublesome. Dr. Fenley had the plaintiff on some very high strength medications, and it strains credulity that he would continue to prescribe those if he knew the plaintiff was drinking 3 (and possibly more) beers at a time, as he admitted to Bluff City Medical Center. Plaintiff had obviously had a problem with alcohol consumption in the past, and him denying continued use to his treating psychiatrist, as noted by the ALJ, seriously compromises the weight to be given to that doctor's opinion.

The primary question in this case is whether there was substantial evidence to support the ALJ's finding of residual functional capacity. It is true that Dr. Spangler, for whatever reason, muddied the waters with his personal opinions, and apparent professional prejudices, regarding Dr. Warren's medical assessment. But the issue is not whether Dr. Spangler agreed with Dr. Warren, the meaning of the term "moderate," or whether psychologists knew as much as vocational experts about the effect of conditions on employability. It is whether Dr. Warren's opinion provided substantial evidence to support the ALJ's RFC finding. It did, and Dr. Spangler identified a substantial number of jobs that a person with that RFC could perform. That was Dr. Spangler's job, he did it, and his editorializing on other matters was irrelevant.

It is the opinion of the Court that there was substantial evidence to support the ALJ's

findings in all respects. It is therefore respectfully recommended that the plaintiff's Motion for Summary Judgment [Doc. 10] be DENIED, and that the defendant Commissioner's Motion for Summary Judgment [Doc. 12] be GRANTED.[3]

Respectfully submitted:

  s/ Dennis H. Inman
United States Magistrate Judge

---

[3] Any objections to this report and recommendation must be filed within fourteen (l4) days of its service or further appeal will be waived. 28 U.S.C. 636(b)(1).